Stanley Cohen and Lorraine Cohen v. Commissioner. Joseph Cohen and Aileen Cohen v. Commissioner.
Cohen v. Commissioner
Docket Nos. 55631, 55632.
United States Tax Court
T.C. Memo 1957-64; 1957 Tax Ct. Memo LEXIS 187; 16 T.C.M. (CCH) 277; T.C.M. (RIA) 57064; April 12, 1957
*187 Irvin Goldstein, Esq., for the petitioners. T. M. Mather, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: Respondent determined deficiencies in income tax for the years, in the amounts and at the docket numbers, as follows: Docket No.
Docket No.
Year
55631
55632
1948
$ 392.92
$ 536.22
1949
6,530.84
4,295.04
1950
1,249.54
338.00 The only question is whether Stanley and Joseph, who are brohters, and are hereinafter referred to as petitioners, (and their respective wives) are taxable on the profits derived from the sale of lots in the taxable years at capital gain rates or as ordinary income. All of the facts have been stipulated and are hereby found accordingly. They are substantially as follows: [Finding of Facts] 1. In 1946 Joseph Cohen was an officer of the California Jockey Club at the Bay Meadows race track at San Mateo, California. Pursuant to a plan to move the paddocks behind the race course a large amount of earth was necessary to raise the level of the area immediately behind the track. During the early part of 1946, as a result of a previous contract made by Mr. Frank Smith, a grading contractor, *188 Mr. W. D. Soule, a civil engineer, and Smith approached Mr. Cohen and suggested to Cohen the purchase of the so-called E. D. Swift subdivision in the town of Belmont, California. It was pointed out that the purchase of this tract would be advantageous since the fill could be sold to the race track. Mr. Cohen agreed to purchase the land, Mr. Soule to do the engineering work in connection with the removal of the fill and Mr. Smith to do the grading and excavation work. Both were to be paid for their services by Cohen. 2. To obtain the necessary funds, Joseph Cohen formed a partnership with his brother, Stanley Cohen on February 19, 1946 with a fiscal year ending January 31, 1947. 3. On February 20, 1946, W. D. Soule obtained options on the E. D. Swift tract consisting of subdivisions 1 and 2 already completed except for sewers and some undeveloped land obove Anita Avenue in the city of Belmont. To bind the option a payment of $5,000 was made, the money being furnished by Joseph and Stanley Cohen. 4. Included in the tract acquired was some unsubdivided land from which the fill for the Bay Meadows property was to be obtained. The removal of the fill involved rock removal and the *189 City of Belmont would not permit quarrying without a permit. To obtain this permit it was also necessary to submit a proposed subdivision plan. Accordingly, application was made for the permit and a map of a proposed subdivision of subdivision number 3 submitted * * *. The proposed subdivision was submitted for the purpose of obtaining the excavation permit. The map was never submitted to the Planning Commission. 5. Frank W. Smith requested permission from the city to construct sanitary sewers and manholes. * * * 6. At the request of W. D. Soule Company the Division of Highways issued an encroachment permit to install sanitary sewers on state property, * * * 7. Pursuant to the oral agreement with Joseph Cohen, the engineering features in connection with the tract were performed by W. D. Soule Company; excavations were made by the Frank Smith Company; and the earth was sold for fill to the California Jockey Club, the city of San Mateo and to various other purchasers. The proceeds of the transactions were used to reduce the cost of the property. 8. During this time sales of various lots in subdivisions 1 and 2 were made and the proceeds therefrom were applied to the purchase *190 price of the tract, the first of such sales occurring in October, 1946. Storm drains and sewers were installed in subdivisions 1 and 2. 9. Beginning May 21, 1946, W. D. Soule Company entered into exclusive sales agreements with the Russell Realty Company. * * * 10. Under date of June 24, 1946, W. D. Soule entered into an option agreement with the Russell Realty Company on 23 lots in subdivisions 1 and 2. * * * 11. On December 2, 1946, Joseph Cohen and Aileen Cohen, his wife, and Stanley Cohen and Lorraine Cohen, his wife, entered into an option agreement with the Russell Realty Company for the sale of lots in subdivisions 1 and 2 of this property. * * * 12. Under date of September 23, 1946, W. D. Soule executed a receipt to the Cohens for monies received by him to be used for the purpose of developing and selling the property in accordance with his oral agreement with the Cohens, * * * 13. Pursuant to a request from the Bank of California on November 20, 1946, that the bank's clients, the Cohens, requested information indicating the degree to which the terms of the purchase of this property had been complied with and the balance due on the purchase price, W. D. Soule furnished *191 to the bank a statement dated November 23, 1946, showing the purchase price, payments made by Mr. Cohen and payments from the sale of rock and of lots up to that time. * * * 14. Under date of December 10, 1946, Joseph Cohen addressed a communication to the California Pacific Title and Insurance Company directing that certain easements for storm drains be included in the deed before the property was disposed of. * * * 15. During the fiscal year ended January 31, 1947, 7 1/2 lots were sold; during the fiscal year ended January 31, 1948, 5 lots were sold; during the fiscal year ended January 31, 1949, 106 lots were sold in three separate sales; and during the fiscal year ended January 31, 1950, 2 lots were sold. * * * On November 5, 1954, on behalf of petitioners Stanley Cohen and Lorraine Cohen, their counsel transmitted to the district director of internal revenue the sum of $8,173.30, and on November 8, 1954, they received a receipt for the same; on the same date, November 5, 1954, on behalf of petitioners Joseph Cohen and Aileen Cohen, their counsel transmitted to the district director of internal revenue the sum of $5,169.23, and they received the district director's receipt *192 stamped and dated November 8, 1954. On June 24, 1946, an option agreement was entered into between the Russell Realty Co. and W. D. Soule Co. for the purchase by the former of 23 lots with the provision that: "All lots to to put in condition for building G.I. homes. All street work and sewers to be put in and paid for by seller. All grading and street work is to be finished on the 23 lots mentioned above, under contract, on Ruth Avenue, Belmont, California, within the 120 days from date hereof." On September 23, 1946 W. D. Soule executed a receipt for $29,000 paid to him by petitioners in equal amounts "as provided in that certain agreement for the purchase and resale of the E. D. Swift property in Belmont, dated August 25, 1946, between Joseph Cohen, Stanley Cohen, W. D. Soule and Frank W. Smith. It is understood that said amount will be used by me solely for the purpose of developing and selling said property as provided in said agreement." The letter from W. D. Soule to The Bank of California, dated November 23, 1946, heretofore referred to, is as follows: "In reply to your letter of November 20th, the following is a statement of the condition of the purchase of the Swift *193 Property located in Belmont, California. Purchase price (Residential prop-
erty)
$50000.00
Purchase price (Highway front-
age)
20325.00
Total
$70325.00
Payments made by Mr. Cohon
February 18th
$ 5000.00
February 25th
1000.00
March 28th
4000.00
April 30th
7500.00
May 31st
1500.00
October 31st
10000.00
November 15th
18000.00
Total
$47000.00
Other payments from sale of rock
June 17th
$ 1000.00
September 30th
1000.00
August 2nd
1.00
Total
$ 2001.00
Sale of lots on Ruth Ave.
During October and Novem-
ber
6000.00
Total payments
$55001.00
"Of this amount $50,000.00 is to be applied as final payment on the Residential property and $5,000.00 for an exsion of the option on the Highway frontage until December 31, 1946. "Deeds covering the Residential property (except those Lots excepted under Cal. Pacific receipt No. 57942 and dated November 15th and which was turned over to Mr. Cohon) for which sales are being completed are at the Title Company ready for Mr. Swift's signature as per his instructions given to said Title Company on November 15th. "From the purchase price of these lots Mr. Swift will receive $1000.00 *194 per lot which will be applied to reduce the balance against the Highway lots. The balance or $500.00 per lot will be retained by the Title Company until the Sanitary Sewer is constructed on Ruth and Malcolm Avenue to serve same. "The $500.00 retained by the said Title Company will be applied against the cost of the sanitary sewers. "Hoping that the above will give you the information your desire, I am, "Very truly yours, " " W.D. Woule [Opinion] Respondent determined that petitioners had received ordinary income rather than capital gain from the sale of the lots in the taxable years. In addition, we find as an ultimate fact that petitioners held the real estate in question for sale to customers in the ordinary course of their trade or business, and that the lots sold in the tax years in issue were not capital assets. All of the usual indications point to the classification of this property as a noncapital asset. See, e.g., . Petitioners' activities in improving and arranging to sell the lots, the frequency and continuity of the transactions, the lack of any other important partnership activities *195 in the current years, and the significant sums involved, all point to an activity in the nature of carrying on a regular business. ; Robert Thomas, 28 T.C. - (April 4, 1957). Even had this property originally been acquired by inheritance, or for use rather than resale, it seems improbable that these factors could be overlooked. , affirming , certiorari denied ; , affirming . See also , citing with approval When we add that except for the inconsequential sale of the fill, the original purpose of the entire transaction was the development, improvement and sale of the lots, there is even less reason here for capital gains treatment. See Gamble v. Commissioner, (C.A. 5, March 21, 1957) - Fed. (2d). Neither the fact that a number of lots were sold in combined transactions through the granting of an option, see , *196 nor that petitioners by means of the partnership and their associates as agents, rather than personally, conducted a large part of the business negates that conclusion. As the Court said in : "While the petitioner did not personally conduct the business of selling lots she did conduct it through another. She sold to all comers, subdividing and developing to attract purchasers. Anyone who wished to buy could do so. Her sales were not isolated transactions; neither were they casual rather than continuing. They were substantial and frequent. * * *" Of course no one factor is conclusive, but the present record taken as a whole has convinced us that we can come to no other conclusion than the one contained in our finding, which disposes of the question and characterizes these properties as having been held primarily for sale in the course of petitioners' business. Decisions will be entered for the respondent.